UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS (WESTERN DIVISION)

| | |
|---|---|
| CINDY LOU PECK, on behalf of herself and all other employees of American Music Group, Inc. similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN MUSIC GROUP, INC., GUITAR CENTER, INC., DAVID FLEMMING, MARTY ALBERTSON and THOMAS RINALDI<br><br>Defendants. | Civil Action No.: 04-30229-KPN |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)**

Defendants, American Music Group, Ltd.[1], Guitar Center, Inc., David Fleming[2], Marty Albertson, and Thomas Rinaldi (referred to as "Defendants"), submit this memorandum of law in support of their motion to dismiss Plaintiff's claims in their entirety.

**INTRODUCTION**

Plaintiff Cindy Lou Peck ("Plaintiff") brings a three-count Complaint against Defendants, alleging that she was not paid minimum wage or overtime compensation for hours worked in violation of the Fair Labor Standards Act ("FLSA") and the Massachusetts wage and overtime statutes, M.G.L. c. 149, § 148 and M.G.L. c. 151, § 1A. Plaintiff's claims against Defendants for allegedly unpaid overtime should be dismissed as a matter of law. As the driver of a truck in the interstate transportation of Defendants' goods, Plaintiff admits in her Complaint that she falls within the motor carrier exemption to the overtime provisions of the FLSA as well as within the

---
[1] American Music Group, Ltd. is improperly named in the Complaint.
[2] David Fleming's name is misspelled in the caption.

Massachusetts motor carrier exemption, M.G.L. c. 151, § 1A(8). Accordingly, Plaintiff is exempt from the recovery of overtime compensation and Counts II and III of the Complaint should be dismissed as a matter of law. Plaintiff's allegations of violations of the FLSA's minimum wage and maximum hours provisions should also be dismissed because these requirements do not apply to outside sales employees.

## STATEMENT OF FACTS[3]

1. Plaintiff was employed as an "Educational Representative" for American Music Group, Ltd. from December 28, 2001 until December 20, 2002. (Complaint[4], ¶ 7).

2. As an Educational Representative, Plaintiff was engaged in marketing musical instruments to educational institutions in the states of Massachusetts and Connecticut. (Complaint, ¶ 10).

3. Plaintiff and the Defendants were engaged in interstate commerce by regularly soliciting sales and rentals of musical instruments to educational institutions in New Hampshire, Massachusetts, and Connecticut, substantial quantities of which were received from the parent company at the Greenfield facility and then marketed, sold, rented, and transported by Peck to various points outside of Massachusetts. (Complaint, ¶ 11).

4. Peck transported musical instruments on behalf of Defendants in a truck owned by the Defendant AMG and driven by Peck. (Complaint, ¶ 12). This transportation was directly essential to the sales and marketing activity of the Defendants and moved in interstate commerce, and the transportation was a process related to the marketing and sale of Defendants' product. (Id.). Peck was engaged in commerce. (Id.).

---

[3] For purposes of this motion only, Defendants accept as true the allegations contained in Plaintiff's Complaint.
[4] Plaintiff's Complaint is attached hereto as Exhibit A.

2

5.  As an Educational Representative, Plaintiff traveled throughout Massachusetts and Connecticut on a daily basis to provide on-site services such as sales and rentals of musical instruments to clients, including music departments and students of educational institutions. (Complaint, ¶ 13).

6.  Plaintiff routinely traveled across state lines and there was a reasonable probability that she would be called upon to transport goods across state lines. (Complaint, ¶¶ 10-14).

## ARGUMENT

**I.  STANDARD FOR RULE 12(b)(6) MOTION**

A Rule 12(b)(6) motion to dismiss should be allowed if it appears that the nonmoving party can prove no set of facts in support of its claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In deciding a motion to dismiss under Rule 12(b)(6), the court assumes the truth of all well-pleaded facts and indulges all reasonable inferences therefore that fit the plaintiff's stated theory of liability. Arruda v. Sears, 310 F.3d 13, 18 (1st Cir. 2002). Although a court must take all well-pleaded facts as true, it need not credit a complaint's "bald assertions" or legal conclusions. Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1216 (1st Cir. 1996); see also Arruda, 310 F.3d at 18 (quoting Chrongris v. Bd. of Appeals, 811 F.2d 36, 37 (1st Cir. 1987) (The court gives no weight to "bald assertions, unsupportable conclusions and opprobrious epithets"). In this case, viewing Counts II and III of Plaintiff's Complaint in the light more favorable to Plaintiff, there is no entitlement to relief.

**II.  PLAINTIFF'S CLAIM FOR OVERTIME UNDER THE FLSA SHOULD BE DISMISSED BECAUSE PLAINTIFF IS COVERED BY THE MOTOR CARRIER EXEMPTION**

In Count III of her Complaint, Plaintiff alleges that Defendants failed to provide her overtime compensation in violation of the overtime provisions of the FLSA, 29 U.S.C. § 207.

3

Although these overtime provisions are generally applicable to employers whose employees work more than 40 hours per week, the FLSA also provides a number of exemptions to its own overtime provisions. See 29 U.S.C. § 213. As Plaintiff's allegations in her Complaint make clear, Plaintiff falls within at least one such exemption – the motor carrier exemption to the overtime provisions of the FLSA. See 29 U.S.C. § 213(b)(1). The motor carrier exemption provides that the overtime provisions of the FLSA shall not apply to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of title 49..." 29 U.S.C. § 213(b)(1).[5]

The relevant section of Title 49 delineates the wide breadth of the Secretary of Transportation and Board's[6] jurisdiction, as follows:

> The Secretary and the Board have jurisdiction..., over transportation by motor carrier and the procurement of that transportation, to the extent that passengers, property, or both, are transported by motor carrier between a place in the United States and a place in a territory or possession of the United States to the extent the transportation is in the United States...

49 U.S.C. § 13501(1)(C). As explained below, Plaintiff falls within the provisions of the motor carrier exemption.

---

[5] Section 31502 applies to transportation described in § 13501 of Title 49. 49 U.S.C. § 31502(a)(1).
[6] The term "Board" means the Surface Transportation Board. 49 U.S.C. § 13102(1).

4

### A. **Elements of The Motor Carrier Exemption**

Under the provisions of the motor carrier exemption, an employee is not entitled to FLSA overtime if three requirements are met:

1. The employee is employed by a motor carrier or motor private carrier within the scope of the Motor Carrier Act;

2. The employee's activities involve the interstate transportation of goods; and

3. The employee's job affects motor vehicle safety.

See 29 U.S.C. § 213(b)(1); 29 C.F.R. § 782.2 (Providing the requirements of the motor carrier exemption); see also U.S. Department of Labor's Wage and Hour Division Field Operations Handbook, § 24e01(a) (May 13, 1992) (Noting that the Department of Transportation "has held that drivers,... engaged in activities which directly affect the safe operation of the motor vehicles in interstate commerce will be subject to its jurisdiction under...the Motor Carrier Act").

#### 1. **The Defendants Qualify as a Motor Private Carrier Pursuant to the Motor Carrier Act**

In her Complaint, Plaintiff essentially avers that Guitar Center is a motor private carrier within the meaning of the Motor Carrier Act. A "motor private carrier" includes "a person, other than a motor carrier[7], transporting property by motor vehicle when – (A) the transportation is [across state lines as provided in 49 U.S.C. § 13501]; (B) the person is the owner, lessee, or bailee of the property being transported; and (C) the property is being transported for sale, lease, rent or bailment or to further a commercial enterprise. 49 U.S.C. § 13102(13).

Plaintiff's own Complaint establishes that all Defendants satisfy all three elements of the motor private carrier. First, Plaintiff establishes that the Defendants transport property by motor vehicle across state lines, by alleging that "At all times pertinent to this Complaint,...Defendants

---

[7] A "motor carrier" is defined as a person providing motor vehicle transportation for compensation. 49 U.S.C. § 13102(12).

5

were engaged in interstate commerce by regularly soliciting sales and rentals of musical instruments to educational institutions in the states of New Hampshire, Massachusetts and Connecticut, substantial quantities of which were received from the parent company at the Greenfield facility and then actually marketed, sold, rented, and transported by Peck,…on behalf of the Defendants, to various points outside the state of Massachusetts." (Complaint, ¶ 11). Second, the Defendants own the musical instruments being transported. See Complaint, ¶ 12 (Referencing "Defendants' product.").

Third, Plaintiff acknowledges that Defendants' property was transported for sale, lease, rent, or to further a commercial enterprise, by averring that the instruments were transported to be "marketed, sold, rented…" to various points outside of Massachusetts and that, "[t]he transportation of musical instruments…was directly essential to the sales and marketing activity of the Defendants…, and the transportation was a process related to the marketing and sale of Defendants' product." (Complaint, ¶¶ 11, 12). Accordingly, the Defendants qualify as a motor private carrier for purposes of the motor carrier exemption to the FLSA. See 49 U.S.C. § 13102(13).

### 2. Plaintiff's Activities Involve the Interstate Transportation of Goods

Plaintiff also admits her activities involved the interstate transportation of goods: she avers in several paragraphs that she drove a truck that transported musical instruments from Massachusetts into New Hampshire and Connecticut. See Complaint, ¶ 11 ("At all times pertinent to this Complaint, Peck…and the Defendants were engaged in interstate commerce by regularly soliciting sales and rental of musical instruments to educational institutions in the states of New Hampshire; Massachusetts and Connecticut…"); Complaint, ¶ 12 ("The transportation of musical instruments by Peck…moved in interstate commerce…"). Highway transportation by

motor vehicle from one state to another, in the course of which the vehicle crosses the state line, clearly constitutes interstate commerce under both the FLSA and the Motor Carrier Act. 29 C.F.R. § 782.7. Hence, Plaintiff's allegations establish the second element of the motor carrier exemption.

### 3.     Plaintiff's Job Affects Motor Vehicle Safety

As the driver of a truck in interstate commerce, Educational Representatives employed by AMG clearly affect motor vehicle safety. A "driver," as defined for Motor Carrier Act jurisdiction (49 C.F.R. §§ 390-395), is "an individual who drives a motor vehicle in transportation which is,…in interstate or foreign commerce." 29 C.F.R. § 782.3. Drivers include those who drive in interstate commerce as part of jobs in which they are required to engage in other types of driving and non-driving work. Id.

Both the Supreme Court and the First Circuit have held that drivers affect the safety of the operation of motor vehicles. See Levinson v. Spector Motor Serv., 330 U.S. 649 (1947); Crooker v. Sexton Motors, Inc., 469 F.2d 206, 209 (1st Cir. 1972) (Plaintiff clearly fell under the motor carrier exemption where he drove in interstate commerce and thus directly affected the safety of operations). Indeed, the First Circuit succinctly noted that "[i]t is obvious that one who drives a vehicle in interstate commerce directly affects the safety of [interstate] operations as long as he is driving." Crooker, 469 F.2d at 209; see also Walling v. Silver Bros. Co., 136 F.2d 168, (1st Cir. 1943) (holding that all of the employer's drivers, helpers, mechanics, and loaders engaged in activities in interstate commerce fall within the motor carrier exemption). As a self-professed driver in interstate commerce, it is undisputed that Plaintiff's job affects motor vehicle safety, thus fulfilling the third element of the motor carrier exemption. See Complaint, ¶ 12 (Noting that Peck transported musical instruments in a truck owned by the Defendant, AMG).

Accordingly, pursuant to the four corners of her Complaint, Plaintiff satisfies all elements of the motor carrier exemption and thus is exempt from the FLSA's overtime provisions. Plaintiff frequently crosses state lines to perform work in other states. See Complaint, ¶¶ 11-14. On any given day, there was a reasonable probability that Plaintiff would be required to cross Massachusetts' state lines to market and sell musical instruments in New Hampshire and Connecticut, which is sufficient in itself to satisfy the motor carrier exemption. See id.; see also U.S. Department of Labor's Wage and Hour Division Field Operations Handbook, § 24e01b (May 13, 1992) (exemption applies in any four-month period when (1) the employer has been involved in interstate commerce, and (2) the employee could reasonably have been expected to make an interstate run or otherwise perform in the employer's interstate activity). Therefore, Count III of the Complaint should be dismissed as a matter of law.

### III. COUNT II OF PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF IS EXEMPT FROM OVERTIME UNDER THE MASSACHUSETTS MOTOR CARRIER EXEMPTION

In Count II of her Complaint, Plaintiff demands judgment against the Defendants pursuant to M.G.L. c. 151, §1A, the Massachusetts statute that provides for overtime compensation for certain employees who work more than 40 hours a week. See M.G.L. c. 151, § 1A. Plaintiff, however, is exempt from Massachusetts' overtime provisions as she falls within Massachusetts' motor carrier exemption, which precludes a driver on a truck engaged in interstate commerce from the state's overtime provisions. See M.G.L. c. 151, § 1A(8).

Massachusetts' motor carrier exemption is nearly identical to the federal motor carrier exemption to the FLSA. It provides, in relevant part, that its overtime provisions are not applicable to any employee who is employed "as a driver...on a truck with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section two hundred and four of the motor carrier act of

nineteen hundred and thirty-five..." M.G.L. c. 151, § 1A(8). This language nearly replicates the language found in the federal regulations concerning the motor carrier exemption. See 29 C.F.R. § 782.1 (Noting that § 13(b)(1) of the FLSA, which provides the motor carrier exemption, applies "to any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 of the Motor Carrier Act."). In the absence of any Massachusetts case law directly addressing the provisions of M.G.L. c. 151, § 1A(8), interpretations of the related federal law are instructive. See Wynn &Wynn, P.C. v. MCAD, 431 Mass. 655, 669-670 n.29 (2000) ("Though we are not bound by Federal courts' interpretations of the similar Federal law, we may look to Federal interpretation for guidance."). Interpreting the Massachusetts motor carrier exemption in line with the nearly-identical federal provision, Plaintiff satisfies the Massachusetts motor carrier exemption and thus is immune from state provisions for overtime compensation. See argument and authorities cited in Section II, above.

IV. **PLAINTIFF WAS EXEMPT FROM THE FLSA'S MINIMUM WAGE AND MAXIMUM HOUR PROVISIONS AS SHE QUALIFIED AS AN OUTSIDE SALES EMPLOYEE**

Although unclear from her allegations, Plaintiff appears to aver that Defendants also violated the FLSA's minimum wage and maximum hours provisions by (1) forcing her "to work for periods during which the minimum wage provided for in the Act was not paid..." and (2) forcing her to work in excess of the maximum hours provided by the FLSA. (Complaint, ¶ 17). Assuming arguendo that Plaintiff is alleging these violations of the FLSA, Plaintiffs' allegations should be dismissed as a matter of law because she falls within the outside sales employee exemption to the FLSA's minimum wage and maximum hour provisions. See 29 C.F.R. § 541.500.

The FLSA explicitly exempts certain employees from its minimum wage and maximum hour provisions:

> The provisions of sections 206 [minimum wage]…and 207 [maximum hours] of this title shall not apply with respect to – (1) any employee employed in…the capacity of outside salesman…

29 U.S.C. § 213(a)(1).

As an Educational Representative for the Defendants, whose job was to "regularly solicit[] sales and rentals of musical instruments to educational institutions," Plaintiff satisfies all elements of the outside sales employee exemption. See 29 C.F.R. § 541.500; see also Complaint, ¶ 11. According to recently-amended portions of the FLSA, an "employee employed in the capacity of outside salesman" in § 13(a)(1) of the Act means any employee:

(1) Whose primary duty is:

    (i) making sales within the meaning of section 3(k) of the Act, or

    (ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer, and

(2) Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.

29 C.F.R. § 541.500.

Plaintiff satisfies the elements of the outside sales employee test. First, her primary duty as an Educational Representative was to sell musical instruments. One's "primary duty" is defined as "the principal, main, major or most important duty that the employee performs…" See 29 C.F.R. § 541.500, quoting 29 C.F.R. § 541.700. Factors to consider when making this determination are the relative importance of the exempt duties as opposed to other types of duties and the employee's relative freedom from direct supervision. Id.

Plaintiff's employment as an Educational Representative revolved around making "sales" within the meaning of section 3(k) of the FLSA. See 29 C.F.R. § 541.500(a)(1)(i). A "sale" according to section 3(k) includes any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition. See 29 C.F.R. § 541.501(b). Throughout her Complaint, Plaintiff reiterates that, as an Educational Representative, she was "engaged in the work of marketing musical instruments," "regularly solicited sales…of musical instruments to educational institutions," and "travel[ed] …to provide on-site services, including sales…of musical instruments to clients." (Complaint, ¶¶ 10, 11, 13). Plaintiff's own Complaint confirms that her primary duty was to make sales within the confines of the FLSA. See 29 C.F.R. § 541.500.

Plaintiff also satisfies the second element of the outside sales employee exemption: she is "customarily and regularly engaged away from the employer's place or places of business in performing such primary duty." See 29 C.F.R. § 541.500(a)(2). The outside sales employee is defined as an employee who makes sales at the customer's place of business. 29 C.F.R. § 541.502. Plaintiff's Complaint confirms that her job was primarily to sell musical instruments to educational institutions (i.e., public schools) that she visited in person. Indeed, Complainant emphasizes that she "regularly solicited sales" of musical instruments to educational institutions in New Hampshire, Massachusetts, and Connecticut, substantial quantities of which Peck retrieved from the Greenfield, Massachusetts facility and then marketed, sold, and transported to clients in person. (Complaint, ¶¶ 11, 13). Accordingly, Plaintiff satisfies both elements of the sales employee exemption and thus is exempt from the FLSA's minimum wage and maximum hour provisions.

Alternatively, Plaintiff is exempt from these FLSA provisions because she also qualifies as a "driver who sells" pursuant to 29 C.F.R. § 541.504. This exception to the FLSA's minimum wage and maximum hour provisions provides that drivers who deliver products and also sell such products may qualify as exempt outside sales employee if the employee's primary duty is making sales. 29 C.F.R. § 541.504(a). In determining the primary duty of drivers who sell, "work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including loading, driving or delivering products" is regarded as exempt outside sales work. Id. Moreover, drivers who provide the only sales contact between the employer and the customers visited, or who call on customers and take orders from products, likely qualify. See 29 C.F.R. § 541.504(c)(1).

As discussed above, Plaintiff "marketed, sold...and transported" musical instruments to clients, and her transportation of musical instruments in a truck she drove "was directly essential to the sales and marketing activity of the Defendants. (Complaint, ¶¶ 11, 12). Plaintiff's own allegations confirm that she qualifies as a driver who sells. 29 C.F.R. § 541.504. Accordingly, she is also exempt from the FLSA's minimum wage and maximum hours provisions pursuant to the "drivers who sell" exemption. Id.[8]

## V. THE COURT SHOULD DISMISS PLAINTIFF'S SUPPLEMENTAL STATE LAW CLAIM FOR ONE WEEK'S UNPAID WAGES

In Count I of her Complaint, Plaintiff demands judgment against the Defendants pursuant to M.G.L. c. 149, § 148, the Massachusetts wage statute, for their alleged failure to provide her wages for a single week in December 2002. (Complaint, ¶¶ 18, 24). The Court should

---

[8] Plaintiff is also exempt from the FLSA's maximum hours provision pursuant to 20 U.S.C. § 213(b), which provides that, "[t]he provisions of section 207 [maximum hours] of this title shall not apply with respect to – (1) an employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of [49 U.S.C. § 31502]. As discussed earlier in this memorandum, Plaintiff falls within this exemption.

summarily dismiss this count because it need not exercise supplemental jurisdiction over this state claim once Plaintiff's federal claim is properly dismissed.

The Court's supplemental jurisdiction over Plaintiff's state law claim for one week of allegedly unpaid wages is governed by 28 U.S.C. § 1367, which provides in relevant part:

> The district courts may decline to exercise supplemental jurisdiction over a claim…if- (3) the court has dismissed all claims over which it has original jurisdiction.

28 U.S.C. § 1367(c)(3).

The only claim over which the Court has original jurisdiction is Plaintiff's claim for overtime pursuant to the FLSA. See 28 U.S.C. § 1337(a) (Noting that the district courts have original jurisdiction over any action "arising under any Act of Congress regulating commerce…").[9] Once this count is appropriately dismissed as a matter of law, for reasons described above, the Court will no longer have original jurisdiction over this action. Accordingly, the Court should decline to exercise supplemental jurisdiction over Plaintiff's pendent state law claim for recovery of one week of compensation and should dismiss this count in its entirety.[10] See e.g., DM Research, Inc. v. Coll. of Am. Pathologists, 170 F.3d 53, 55, 58 (1st Cir. 1999) (affirming the dismissal of plaintiff's federal count for failure to state a claim and declining to exercise supplemental jurisdiction over the remaining state law claims); Serapion v. Martinez, 119 F.3d 982, 993 (1st Cir. 1997) (Noting that once the district court determined the federal claim would be dismissed, it had "substantial discretion under 28 U.S.C. § 1367(c)(3)" to relinquish jurisdiction over the supplemental state law claim); Martinez v. Colon, 54 F.3d 980, 990-91 (1st Cir. 1995) (Holding that once the court properly and summarily disposed of

---

[9] In her Complaint, the Plaintiff admits that the Court's jurisdiction lies in 28 U.S.C. § 1337. (Complaint, "Jurisdiction").

[10] The Court similarly lacks supplemental jurisdiction over Plaintiff's count for allegedly unpaid overtime pursuant to Massachusetts' overtime statute, M.G.L. c. 151, § 1A. This claim, however, should be dismissed for reasons discussed earlier.

plaintiff's federal claims, "the jurisdictional basis for plaintiff's pendent claims under [state law] evaporated" and the balance of the complaint was properly dismissed).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiff's Complaint and enter judgment for Defendants on the Complaint in its entirety.

Respectfully submitted,

AMERICAN MUSIC GROUP, LTD.,
GUITAR CENTER, INC., DAVID
FLEMING, MARTY ALBERTSON,
and THOMAS RINALDI,

By their attorneys,

/s/ Stephen T. Paterniti
Stephen T. Paterniti (BBO #564860)
Amanda S. Rosenfeld (BBO #654101)
Jackson Lewis LLP
75 Park Plaza
Boston, MA  02116
(617) 367-0025

Dated:  February 4, 2005

# **EXHIBIT A**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS (WESTERN DIVISION)

Case No.:

CINDY LOU PECK, on behalf of herself )
and all other employees of American Music )
Group, Inc. similarly situated, )
    Plaintiffs, )
     )
v. )   COMPLAINT AND DEMAND FOR
     )   JURY TRIAL
AMERICAN MUSIC GROUP, INC., )
GUITAR CENTER, INC., DAVID )
FLEMMING, MARTY ALBERTSON )
and THOMAS RINALDI )
    Defendants. )

## NATURE OF CLAIMS

The above-named Plaintiff, at all times relevant to this action an employee of the Defendants American Music Group, Inc. and Guitar Center, Inc., brings this action on behalf of herself and other similarly situated employees of the Defendants to recover unpaid minimum wages, overtime compensation, liquidated damages, attorneys fees and costs, under the provisions of Section 7 and Section 16(b) of the Fair Labor Standards Act of 1938 as amended (29 U.S.C.A. § 207; 29 U.S.C.A. § 216(b) hereinafter referred to as the Act).

## JURISDICTION

Jurisdiction of this action is conferred on this Court by Section 7 and Section 16(b) of the Act (29 U.S.C.A. § 207; 29 U.S.C.A. § 216(b)), and by the provisions of 28 U.S.C.A. § 1337 relating to "any civil action or proceeding arising under any act of Congress regulating commerce." This Court has supplemental jurisdiction over the claims in this action arising under the laws of the Commonwealth of Massachusetts, M.G.L.A. c. 149 § 148 and M.G.L.A. c. 151 § 1A, pursuant to Section 1367 of Title 28 and the principles of pendent jurisdiction.

## PARTIES

1. Cindy Lou Peck, (hereinafter "Peck"), is an individual who resides at 46 Rowe Road, Heath, Franklin County, Massachusetts.

2. The Defendant American Music Group, (hereinafter "AMG"), is a nationwide corporation with its corporate offices located at 7845 Maltage Drive, Liverpool, New York 13090. At all times pertinent to this Complaint, the Defendant maintained a regional facility at 20 Colrain Street, Greenfield, Massachusetts 01301.

3. The Defendant Guitar Center, Inc., (hereinafter "Guitar Center"), is a nationwide corporation with its corporate offices located at 5795 Lindero Canyon Road, Westlake Village, CA 91362 and is an enterprise within the meaning of 29 U.S.C. § 203(r).

4. The Defendant David Flemming, (hereinafter "Flemming"), is President of AMG.

5. The Defendant Marty Albertson, (hereinafter "Albertson"), is President of Guitar Center, Inc.

6. The Defendant Thomas Rinaldi, (hereinafter "Rinaldi"), is the manager of the AMG Greenfield facility and was the manager and supervisor of Peck while she was an employee of AMG.

## FACTS

7. Peck was hired on December 28, 2001 as an "Educational Representative" for AMG and was employed as such until December 20, 2002 when she was terminated.

8. AMG has nineteen facilities nationwide, one of which is the facility located at 20 Colrain Street, Greenfield, Franklin County, Massachusetts.

9. Peck was hired to work at the Greenfield facility by Rinaldi, on behalf of AMG, after responding to a newspaper advertisement dated December 11, 2001. Upon being interviewed, she was informed that her salary would be $28,500.00 per year. After she was hired, she was told her salary would be $26,500.00 per year.

10. Peck was, at all times pertinent to this Complaint, an Educational Representative engaged in the work of marketing musical instruments to educational institutions in the states of Massachusetts and Connecticut. At all times pertinent to this Complaint, Peck was an employee of the Defendants and, at all times pertinent to this Complaint, the Defendant AMG was engaged in the business of marketing musical instruments from its regional facility at 20 Colrain Street, Greenfield, Franklin County, Massachusetts.

11. At all times pertinent to this Complaint, Peck, on behalf of the Defendants, and the Defendants were engaged in interstate commerce by regularly soliciting sales and rentals of musical instruments to educational institutions in the states of New Hampshire, Massachusetts and Connecticut, substantial quantities of which were received from the parent company at the Greenfield facility and then actually marketed, sold, rented, and transported by Peck and other similarly situated employees of the Defendants, on behalf of the Defendants, to various points outside the state of Massachusetts.

12. The transportation of musical instruments by Peck, on behalf of the Defendants, in a truck owned by the Defendant, AMG, and driven by Peck, was directly essential to the sales and marketing activity of the Defendants and moved in interstate commerce, and the transportation was a process related to the marketing and sale of the Defendants'

product, and Peck and other similarly situated employees of the Defendants, therefore, were engaged in commerce, as that term is used in the Act, while employed by the Defendants.

13. While employed by AMG, Peck served as an "Educational Representative," traveling throughout Massachusetts and Connecticut to provide on-site services, including sales and rentals of musical instruments to clients, including music departments and students of educational institutions.

14. Peck spent an average of 40% of her time performing such on-site service, 20% of her time performing activities at the Greenfield facility related to such on-site service, and 40% of her time performing activities at the Greenfield facility unrelated to outside sales activity or service. These tasks included setting up displays, answering retail phones, placing collection calls and requesting payment from past due customers, attending to walk-in customers, filing contracts, pulling instruments from stock and making inspections, performing computer research on instruments database, and performing miscellaneous research for AMG and Rinaldi.

14. Defendants inappropriately and willfully classified Peck as an exempt employee, under 29 U.S.C. § 213(a)(1), although she did not meet the criteria for such an exemption since she spent 40% of the hours worked in a workweek performing activities other than making outside sales and obtaining orders or contracts for services or for the use of facilities.

15. Peck worked an average of 85 hours a week, with hours during the fall months exceeding 100 hours a week. The longest of those weeks was 107 hours. Peck worked 7-day workweeks during most of her employment. During employment, Peck received a salary payment of $509.00 per week.

16. Though Defendants decreased Peck's pay for weeks when she was ill and/or on authorized medical leave, Defendants did not add pay for weeks when she worked overtime.

17. At all times pertinent to this Complaint, Defendants willfully failed to comply with the Fair Labor Standards Act, in that Peck worked for Defendants in excess of the maximum hours provided by the Act and payments were not made to Peck by Defendants at the rate of time and a half for the hours worked by Peck in excess of the hours provided for in 29 U.S.C. § 207(a)(1). Moreover, Peck was forced by Defendants to work for periods during which the minimum wage provided for in the Act was not paid and, more particularly, for which no payment whatsoever was made by the Defendant to Peck, all in violation of the mentioned Fair Labor Standards Act.

18. Peck was away from work on authorized leave for medical treatment beginning on November 27, 2002. Peck returned from this leave on December 16, 2002 and worked until December 20, 2002 at which time she was terminated without receiving compensation for that workweek and other wages owed to her.

19. Peck alleges that the hours she worked from September 5, 2002 to December 20, 2002, when the Defendants terminated her, regularly exceeded 85 per week. Peck alleges that she worked a minimum of 45 hours a week over the 40-hour a week standard reflected in company documents for her position, for which she was not compensated.

20. Peck also seeks liquidated damages pursuant to 29 U.S.C. § 216(b).

21. By reason of the Defendant's willful refusal to pay the unpaid minimum wages and overtime due Peck, it has been necessary for her to employ counsel to prosecute this cause.

## COUNT I

22. The Plaintiff repeats and reasserts the allegations of Paragraphs 1 – 21 above as if fully set forth herein.

23. The Plaintiff appropriately filed a complaint with the Office of the Attorney General for the Commonwealth of Massachusetts and received authorization to pursue pendant state matters through civil suit on August 14, 2003.

24. The Defendants; Guitar Center, AMG, Flemming, Albertson and Rinaldi, failed to pay the Plaintiff her total accrued wages on her date of discharge, in violation of Massachusetts General Laws Chapter 149, § 148, which states, inter alia:

> "any employee discharged from said employment shall be paid in full on the date of his discharge..." and further states "[t]he president and treasurer of a corporation and any officers or agents having the management of such corporation shall be deemed to be the employers of the employees of the corporation within the meaning of this section."

## COUNT II

25. The Plaintiff repeats and reasserts the allegations in Paragraphs 1-24 above as if fully set forth herein.

26. Defendants violated M.G.L.A. c. 151 § 1A by employing non-exempt employees, including Plaintiff, for workweeks longer than 40 hours without compensation for excess hours and without paying time and a half for excess hours.

27. Plaintiff seeks treble damages, pursuant to M.G.L.A. c. 151 § 1B, for Defendants violation of M.G.L.A. c. 151 § 1A.

## COUNT III

28. The Plaintiff repeats and reasserts the allegations in Paragraphs 1-27 above as if fully set forth herein.

29. Defendants willfully violated 29 U.S.C. § 207 by employing non-exempt employees, including Plaintiff, for workweeks longer than 40 hours without compensation for excess hours and without paying time and a half for excess hours.

30. As a result of Defendants' willful violation, Plaintiff appropriately brings this cause of action in accordance with 29 U.S.C. § 255(a) within three years after the cause of action accrued.

WHEREFORE, the Plaintiff requests:

1. Judgment against the Defendants in the amounts respectively due the Plaintiff for minimum wages, overtime compensation, liquidated damages, and costs under the provisions of the Fair Labor Standards Act of 1938 as amended and under M.G.L.A. c. 149 § 148 and M.G.L.A. c. 151 § 1A and § 1B.

2. Award to the Plaintiff a reasonable attorneys fee.

3. Such other and further relief as this Court deems proper.

## DEMAND FOR JURY TRIAL

Now comes the Plaintiff and respectfully demands trial by jury on all issues so triable.

Date:

*Nov 22, 2004*

Respectfully submitted,
The Plaintiffs,
By their attorney,

*John J. Green*
John J. Green, Jr.
Green, Miles, Lipton & Fitz-Gibbon
77 Pleasant Street, P.O. Box 210
Northampton, MA 01061-0210
Telephone: (413) 586-8218
Facsimile: (413) 584-6878
jgreen@greenmiles.com
BBO# 209020