UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS (WESTERN DIVISION)

CINDY LOU PECK,  on behalf of herself
and all other employees of American Music
Group, Inc. similarly situated,

      Plaintiffs,

v.

AMERICAN MUSIC GROUP, INC.,
GUITAR CENTER, INC., DAVID
FLEMMING, MARTY ALBERTSON
and THOMAS RINALDI

      Defendants.

Civil Action No.: 04-30229-KPN

## MEMORANDUM OF DEFENDANTS IN REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)

Defendants, American Music Group, Ltd.[1], Guitar Center, Inc., David Fleming[2], Marty Albertson, and Thomas Rinaldi (referred to as "Defendants"), submit this reply memorandum in response to Plaintiff's Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)[3] and in further support of its motion to dismiss.  Defendants submit this reply to address Plaintiff's arguments that her Complaint[4] does not establish that she falls under the motor carrier exemption and the outside sales exemption to the Fair Labor Standards Act ("FLSA").[5]

---

[1] American Music Group, Ltd. is improperly named in the Complaint.
[2] David Fleming's name is misspelled in the caption.
[3] Hereinafter, Plaintiff's Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) will be cited as (Pl. Opp. at __).
[4] Hereinafter, Plaintiff's Complaint will be cited as (Compl. ¶__).
[5] In her Opposition, Plaintiff alleges that the document she marked as Exhibit A is "evidence that Defendants waived the exemptions of the FLSA and Motor Carrier Act" for certain periods of her employment. (Pl. Opp. at 7).  This document, a memorandum provided to "everyone," cannot support such a conclusion.   The memorandum asks employees to work on a Sunday to complete an inventory, and that "salaried people" "will be compensated for the extra time [they are] giving."  See Exhibit A to Plaintiff's Opposition.  Plaintiff's status as an exempt employee is

**ARGUMENT**

**I.    PLAINTIFF QUALIFIES AS A "DRIVER" WITHIN THE MEANING OF THE MOTOR CARRIER EXEMPTION**

In an attempt to avoid dismissal of her Complaint because she is exempt from the FLSA and G.L. c. 151, Plaintiff argues that her Complaint does not clearly establish that she is a "driver" as that term is defined by the motor carrier exemption to the FLSA.[6]  Plaintiff's argument is based on a misinterpretation of the law.

A "driver" is "an individual who drives a motor vehicle in transportation which is, within the meaning of the Motor Carrier Act....in interstate commerce." 29 C.F.R. § 782.3(a).  To be engaged as a "driver," an employee need not be engaged in driving in interstate commerce at all times. "It is recognized that even full-duty drivers devote some of their working time to activities other than such driving." Id.

The allegations in Plaintiff's Complaint establish that Plaintiff qualifies as a "driver" for motor carrier exemption.  See 29 C.F.R. § 782.3(a).   Throughout her Complaint, Plaintiff emphasizes that she was employed to drive a truck in interstate commerce on behalf of AMG. (Compl. ¶¶10, 11, 12).  Indeed, Plaintiff alleges she spent an average of 40% of her time traveling interstate in a truck and providing on-site services to educational institutions and another 20% of her time in activities related to this travel for on-site sales and service. (Compl. ¶¶13, 14).

Although unclear in her opposition, Plaintiff also appears to argue that she does not meet the definition of a "driver" because the Complaint does not allege that she drove a "commercial

---

not terminated simply because she might have received additional compensation for this day's work. 29 C.F.R. § 541.604.  Assuming arguendo that Plaintiff worked this Sunday and received compensation for this work, such additional compensation does not alter Plaintiff's exempt status.

[6] Plaintiff does not deny that her work directly affects the safety of motor vehicles, which is the second element of the motor carrier exemption. (Pl. Opp. at 3).

motor vehicle". (Pl. Opp. at 3). This argument also fails. Employees are exempt from the FLSA under the motor carrier exemption if they are subject to the Secretary of Transportation's jurisdiction under the Motor Carrier Act. 29 C.F.R. §782.2(a), cited in THE FAIR LABOR STANDARDS ACT, ABA Section of Labor and Employment Law (Ellen C. Kearns, ed., 1999), at 334; see also Herman v. Hector I. Nieves Transp., Inc., 244 F.3d 32, 35 (1st Cir. 2001) (citing Morris v. McComb, 332 U.S. 422, 432-36 (1947) ("To the extent that some portion of a motor carrier's activities fall within the Secretary [of Transportation's] jurisdiction, the exemption applies broadly to covered employees"); Peraro ex rel. Castro v. Chemlawn Servs. Corp., 692 F. Supp. 109, 114 (D. Conn. 1998) (If the character of an employee's activities has a substantial effect on motor vehicle safety, then the employer is exempt under 29 U.S.C. § 213(b)(1)); U.S. Department of Labor's Wage and Hour Division Field Operations Handbook ("FOH"), § 24a (May 13, 1982) (relevant portions attached hereto as Exhibit A). The Secretary of Transportation's jurisdiction extends to motor private carriers of property. FOH, §24a05. "Motor private carrier" is defined as:

> A person, other than a motor carrier, transporting property by motor vehicle, when –
>
> (A)  the transportation is… in [interstate commerce];
>
> (B)  the person is the owner, lessee or bailee of the property being transported; and
>
> (C)  the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise.

49 U.S.C. § 13102(13).

As set forth in Defendants' memorandum in support of their Motion to Dismiss, Plaintiff's Complaint contains allegations that meet the definition of "private motor carrier." See Peraro, 692 F. Supp. at 113-14 (specialist driving company truck to clean carpets at customer site

held to be "motor private carrier" covered by motor carrier exemption). Plaintiff's attempt to avoid dismissal by arguing that Defendants have to prove she drove a "commercial motor vehicle" as defined by 49 C.F.R. §390.5 is simply misplaced.[7]

Plaintiff's Complaint also establishes that she is a driver-salesman within the meaning of the motor carrier exemption. Driver-salesmen such as Plaintiff "devote much of their time to selling goods rather than to activities affecting...safety of operation." 29 C.F.R. § 782.3(a); see also Ackerman v. Coca-Cola Enters., Inc., 179 F.3d 1260, 1265 (10th Cir. 1999) (noting that driver-salesmen deliver products and make sales). Plaintiff's employment admittedly revolved around the two activities of delivering products and making sales. Indeed, she admits her job duties as an Educational Representative included traveling to educational institutions in Massachusetts, New Hampshire, and Connecticut to solicit sales of musical instruments. (Compl. ¶¶10, 11); see, e.g., Talton v. I.H. Caffey Distrib. Co., Inc., 2005 U.S. App. LEXIS 927 (4th Cir. Jan. 18, 2005); Gavril v. Kraft Cheese Co., 42 F. Supp. 702, 704-705 (D. Ill. 1941) (employer's motion to dismiss granted where driver-salesmen who removed food products from warehouses to be sold to various grocers, stores, restaurants, and retail dealers were excluded from the FLSA's overtime provisions); Hodgson v. Royal Crown Bottling Co., Inc., 324 F. Supp. 342, 347 (N.D. Miss. 1970) (driver-salesmen's work directly related to the safe operation of the trucks and thus employees were exempt from receiving overtime).

In short, Plaintiff's Complaint alleges she drove a truck in interstate commerce, that such a job is subject to Department of Transportation ("DOT") jurisdiction, and thus she is exempt under the Motor Carrier Act.

---

[7] Because Plaintiff satisfies the elements of the federal motor carrier exemption, Plaintiff also satisfies the nearly-identical Massachusetts motor carrier exemption. See M.G.L. c. 151, § 1A(8).

II.    **THE COMPLAINT NEED NOT ESTABLISH THE WEEKS IN WHICH PLAINTIFF ALLEGEDLY PERFORMED NON-EXEMPT WORK TO DETERMINE THAT PLAINTIFF FALLS WITHIN THE MOTOR CARRIER EXEMPTION**

Plaintiff also argues that the motion to dismiss should be denied because her Complaint fails to allege "whether Plaintiff performed...exempt activities each week in which she is claiming" overtime and minimum wage violations. (Pl. Opp. at 6). Apparently, Plaintiff believes that she should be considered non-exempt unless and until her activities each and every week can be proven. This is another misstatement of the law. The FLSA regulations do not require a mathematical calculation of weeks to determine whether an employee satisfies the motor carrier exemption. Instead, if an employee regularly or periodically engages in safety-affecting activities, she is covered by the exemption. 29 C.F.R. § 782.2(b)(3).

As set forth in the relevant regulations, if the employee regularly performs such duties, she comes within the exemption in *all* workweeks:

> [I]f the bona fide duties of the job performed by the employee are in fact such that he is...called upon in the ordinary course of his work to perform, *either regularly or from time to time*, safety-affecting activities...he comes within the exemption *in all workweeks when he is employed at such job.* This general rule assumes that the activities involved in the continuing duties of the job in all such workweeks will include activities which have been determined to affect directly the safety of operation of motor vehicles on the public highways in transportation in interstate commerce. Where this is the case, the rule applies *regardless of the proportion of the employee's time* or of his activities which is actually devoted to such safety-affecting work in the particular workweek, and the exemption will be applicable *even in a workweek when the employee happens to perform no work directly affecting "safety of operation."*

29 C.F.R. § 782.2(b)(3) (emphasis added); see also Levinson v. Spector Motor Serv., 330 U.S. 649, 675 (1947) ("[A]n employee who is engaged in a class of work that affects safety of

operation is not necessarily engaged during every hour or every day in activities that directly affect safety of operation"); Gerard v. N. Transp., LLC, 146 F. Supp. 2d 63, 67 (D. Me. 2001) (Noting that the FLSA regulations provide that if an employer regularly or from time to time calls on a driver to carry goods over state lines, then the motor carrier exemption applies to "all workweeks when he is employed at such job") (quoting 29 C.F.R. § 782.2(b)(3)).

Moreover, the DOT can assert jurisdiction for consecutive four-month periods even if an employee does not make an interstate trip in any particular week. See FOH, § 24e01(b) (relevant portions attached hereto as Exhibit B).[8] This employee would be exempt under Section 13(b)(1) for the same four-month period, "notwithstanding references to the contrary contained in [29 C.F.R. §] 782.2." Id.; see also Levinson, 330 U.S. at 674-75 ("It is the character of the activities rather than the proportion of either the employee's time or of his activities that determines the actual need for the Commission's power to establish reasonable requirements with respect to qualifications, maximum hours of service, safety of operation and equipment").

Plaintiff concedes in her Complaint that she was regularly called upon in the ordinary course of business to perform safety-affecting activities. See argument and authorities cited in Section I, above. She also admits that she performed the same job throughout her entire employment with AMG. Accordingly, Plaintiff falls within the exemption in all workweeks when she was employed by the Defendants, even during times when she may not have performed work directly affecting the safety of operation of a motor vehicle. See 29 C.F.R. § 782.2(b)(3).

---

[8] A driver is subject to DOT jurisdiction if (1) the employer is involved in interstate commerce; and (2) the employee could reasonably have been expected to make an interstate run or otherwise perform in the employer's interstate activity. Id. When such evidence is established, the DOT asserts jurisdiction over the employee for a four-month period beginning with the date he could have been called upon to, or actually did, engage in the employer's interest activity. Id.

### III.   THE ALLEGATIONS IN PLAINTIFF'S COMPLAINT ESTABLISH THAT PLAINTIFF QUALIFIES AS AN OUTSIDE SALESMAN

Plaintiff also argues that she does not qualify for the separate and independent exemption under the FLSA for outside salesmen because the Complaint does not establish that her "primary duty" was, in part, to make sales within meaning of the Act, or that Plaintiff was "customarily and regularly engaged away from the employer's place…of business in performing such primary duty." (Pl. Opp. at 5).[9]  This argument is meritless.

First, the Complaint establishes that Plaintiff's "primary duty" was making sales within section 3(k) of the Act.  See 29 C.F.R. § 541.500.  To determine an employee's primary duty, the regulations suggest examining the amount of time an employee spends performing exempt sales work:

> The term "primary duty" means the principal, main, major or most important duty that the employee performs….The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee.  Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. *Time alone, however, is not the sole test*, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion.

29 C.F.R. § 541.700(a)-(b) (emphasis added).

Moreover, work incidental to exempt work is also considered exempt work in the primary duty analysis:

---

[9] In her Opposition, Plaintiff does not deny that she is exempt from the FLSA's minimum wage and maximum hour provisions because she also qualifies as a "driver who sells" pursuant to 29 C.F.R. § 541.504.

> Work that is "directly and closely related" to the performance of
> exempt work is also considered exempt work.  The phrase
> "directly and closely related" means tasks that are related to
> exempt duties and that contribute to or facilitate performance of
> exempt work,…includ[ing]…menial tasks that arise out of exempt
> duties, and the routine work without which the exempt employee's
> exempt work cannot be performed properly.

29 C.F.R. § 541.703(a).

The Complaint establishes that Plaintiff's principal duty was the exempt sales work of selling musical instruments to educational institutions in three states. (Compl. ¶¶10 - 13).  The Complaint also establishes that in addition to the 40% of her time performing exempt on-site sales work, Plaintiff spent another 20% of her time performing activities at the Greenfield facility "related to such [exempt] on-site service…" (Compl. ¶14).  This work that is "directly and closely related" to Plaintiff's performance of exempt, on-site sales work is considered exempt work for purposes of the primary duty test.  See 29 C.F.R. § 541.703(a).  Accordingly, Plaintiff alleges she spent 60% of her time performing exempt sales work and thus satisfies the primary duty requirement of the outside sales exemption.  See 29 C.F.R. § 541.700(b).[10]

Plaintiff's Complaint establishes the second element of the outside sales exemption, that she is customarily and regularly engaged away from the employer's place of business in performing the primary duty of making sales.  See 29 C.F.R. § 541.500.  It is not necessary, as Plaintiff avers, for the Complaint to elucidate the "specific hours or time periods where these activities took place" in order for the Court to determine that she meets the second element of the outside sales exemption.  (Pl. Opp. at 5).  The FLSA does not require such specificity to determine whether exempt work was performed "customarily and regularly," instead requiring:

---

[10] Plaintiff would be able to satisfy the primary duty test even if she did *not* spend more than 50 percent of her time performing exempt work; as noted above, Plaintiff's main duty was soliciting sales of musical instruments. (Complaint, ¶¶10, 11, 13).

> [A] frequency that must be greater than occasional but which, of
> course, may be less than constant.  Tasks or work performed
> "customarily and regularly" includes work normally and
> recurrently performed every workweek; it does not include isolated
> or one-time tasks.

29 C.F.R. § 541.701.

As an Educational Representative, Plaintiff was responsible for regularly "traveling throughout Massachusetts and Connecticut to provide on-site services..." (Compl. ¶13).  Indeed, she was "engaged in interstate commerce by regularly soliciting sales and rentals of musical instruments to educational institutions in the states of New Hampshire, Massachusetts and Connecticut, substantial quantities of which were received from the parent company at the Greenfield facility and then actually marketed, sold, rented, and transported by Peck...to various points outside of the state of Massachusetts."  (Compl. ¶11).  This transportation of musical instruments in a truck driven by Peck "was directly essential to the sales and marketing activity of the Defendants and moved in interstate commerce..." (Compl. ¶12).  As noted above, Plaintiff spent 40% of her time traveling to sites outside of Massachusetts. (Compl. ¶14).  One who travels outside the state 40% of the time and who "regularly solicits" sales in New Hampshire and Connecticut undoubtedly is not performing her primary duty on an isolated or one-time basis.  See 29 C.F.R. § 541.701.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Defendants' February 4, 2005 Memorandum of Law In Support of Its Motion To Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants respectfully request that this Court grant Defendants' Motion To Dismiss in its entirety.

Respectfully submitted,

AMERICAN MUSIC GROUP, LTD.,
GUITAR CENTER, INC., DAVID
FLEMING, MARTY ALBERTSON,
and THOMAS RINALDI,

By their attorneys,


/s/ Stephen T. Paterniti
Stephen T. Paterniti (BBO #564860)
Amanda S. Rosenfeld (BBO #654101)
Jackson Lewis LLP
75 Park Plaza
Boston, MA  02116
(617) 367-0025

Dated:  March 28, 2005

# EXHIBIT A

Rev.  492          FIELD OPERATIONS HANDBOOK - 5/13/82        24a - 24a03

Chapter 24

TRANSPORTATION EXEMPTIONS

24a    MOTOR CARRIER EXEMPTION - SEC 13(b)(1)

24a00  General provisions of FLSA Sec 13(b)(1) and IB 782

  (a)  FLSA Sec 13(b)(1) provides that FLSA Sec 7 shall not apply to any
     employee for whom the Department of Transportation's Federal Highway
     Administration (DOT/FHWA) has power to establish qualifications and
     maximum hours of service pursuant to the provisions of Sec 204 of the
     Motor Carrier Act of 1935.

  (b)  IB 782, together with the instructions contained in this chapter, form
     the official WH position with respect to the application of Sec 13(b)(1).

24a01  Leasing and renting of motor vehicles

  (a)  Generally, the Sec 13(b)(1) exemption is limited to employees of motor
     carriers (see IB 782.2).  However, the Motor Carrier Act gives the DOT
     power to establish qualifications and maximum hours of service for
     drivers employed by non-carriers in situations where the non-carrier
     leases or rents motor vehicles with such drivers to motor carriers.
     Thus, where all other tests for exemption are met, Sec 13(b)(1) is
     applicable to these drivers while they are driving the motor vehicles
     leased or rented to motor carriers, on the same basis as if they were
     actually employed by the carriers.

  (b)  Except as provided in (a) above, Sec 13(b)(1) does not extend to other
     safety-affecting employees of the leasing or renting establishment,
     such as mechanics, unless the employer is a motor carrier in his own
     right.  For example, the employer may conduct his operations in such a
     manner as to be a private carrier, or he may lease or rent motor
     vehicles to a shipper under such conditions that he maintains control
     and direction over the carrier services performed in which case he would
     be a contract carrier.

24a02  Effect of ownership of motor vehicles upon status as a motor carrier

     A company may be a motor carrier for the purposes of the Motor Carrier
     Act whether it owns, rents, or leases the motor vehicles it uses.

24a03  FLSA Sec 13(b)(1) not applicable under PCA

     While certain employees may be exempt under Sec 13(b)(1) from the OT
     pay requirements of the FLSA, the daily and weekly OT pay provisions of
     the PCA are applicable to these employees if they are subject to the
     PCA.  Likewise, the exemption contained in FLSA Sec 13(b)(1) has no
     relationship to PCA Sec 9 which provides a specific exemption under the
     PCA for the carriage of freight or personnel by bus or truck where
     published tariff rates are in effect.

Rev.  492          FIELD OPERATIONS HANDBOOK - 5/13/82          24a04 - 24a06

24a04  Motor carriers of migrant workers

While DOT/FHWA has authority to establish certain regulations with
respect to carriers of "migrant workers", the Motor Carrier Act
specifically provides that the exemption under FLSA Sec 13(b)(1) shall
not extend to such carriers solely by virtue of such transportation.  A
migrant worker is defined in that law as any individual proceeding to or
returning from employment in agriculture as defined in FLSA Sec 3(f).

24a05  DOT jurisdiction over private carriers limited to carriage of property

(a)  Sec 203(a)(17) of the Motor Carrier Act defines the term "private carrier
     of property by motor vehicle" to mean "any person not included in the
     terms 'common carrier by motor vehicle' or 'contract carrier by motor
     vehicle', who or which transports in interstate or foreign commerce by
     motor vehicle property of which such person is the owner, lessee, or
     bailee, when such transportation is for the purpose of sale, lease, rent,
     or bailment, or in furtherance of any commercial enterprise".

(b)  It should be noted that the DOT jurisdiction over private carriers is
     limited to private carriers of "property".  If the transportation of
     persons is the primary purpose of a trip in interstate commerce by a
     private carrier and any incidental transportation of property is not
     significant as a reason for the trip, the transportation involved would
     not be within the jurisdiction of the DOT.  An employee would not be
     considered as engaged in transporting property for purposes of the Motor
     Carrier Act because of an arrangement to drive by the post office on his way
     to or from work to pick up or deliver his employer's interstate mail or
     packages, whether bulky or not.

(c)  If the transportation of property, regardless of its bulk or weight, is
     the primary purpose of an interstate trip by a private carrier, or if the
     transportation of such property is a distinct and definite reason for
     the trip along with the transportation of persons, the transportation is
     within the jurisdiction of the DOT.  This principle would apply, for
     example, where property such as an automobile or a truck is driven to
     another State not simply as a means of transportation for the driver or
     passengers but because the movement of the vehicle itself is a distinct
     purpose of the trip.  Likewise, this principle applies where self-propelled
     machines such as bulldozers and cranes are driven over the public highways
     as part of a journey in which such vehicles are moved from one State to
     another.

(d)  The fact that an employee of a private carrier may use his own vehicle
     in transporting property in interstate commerce does not deny an otherwise
     applicable exemption.

24a06  Freight forwarders who are not carriers

The FLSA Sec 13(b)(1) exemption does not apply to the loading and
checking employees of an interstate freight forwarder who does not

own, lease, or rent trucks, but contracts for transportation of the
goods with a carrier.  Such a freight forwarder is not a motor carrier
within the meaning of the Motor Carrier Act.

24a07  <u>Transportation of explosives and other dangerous articles</u>

The DOT (FHWA) has power to regulate the <u>intrastate</u>, as well as interstate
and foreign shipment of explosives and other dangerous articles (such
as corrosive acids, flammable liquids, radioactive materials, etc.) under
the Explosives and Other Dangerous Articles Act.  However, the Motor
Carrier Act and the Explosives and Other Dangerous Articles Act are
completely separate pieces of legislation.  Consequently, the fact that
the Federal Highway Administration asserts jurisdiction under the
Explosives and Other Dangerous Articles Act over employees engaged in
such transportation has no bearing on their status under Sec 13(b)(1).  The
exempt or nonexempt status of such employees under Sec 13(b)(1) shall
be determined in the normal manner.

# EXHIBIT B

Case 3:04-cv-30229-MAP    Document 14    Filed 03/28/2005    Page 16 of 16

24e    APPLICATION OF THE EXEMPTION - SEC 13(b)(1)

24e00    Requirements for exemption in general

IB 782.2 sets forth the bases on which the exemption is applied to
employees of common, contract, and private carriers.

24e01    Extent of DOT jurisdiction

(a) DOT has held that drivers, driver's helpers, loaders, and mechanics
engaged in activities which directly affect the safe operation of motor
vehicles in interstate commerce will be subject to its jurisdiction under
Sec 204 of the Motor Carrier Act. This applies to such employees who are
employed by a common, contract, or private carrier which has engaged in
the interstate transportation of goods. In the case of a common carrier
that has solicited interstate transportation business pursuant to a valid
I.C.C. certificate, it would not be necessary to have actually engaged in
the interstate transportation of goods.

(b) Where a driver or driver's helper has not made an actual interstate trip,
or a loader or mechanic has not been working on an interstate shipment or
vehicle which has been utilized in such a shipment, they may still be
subject to DOT's jurisdiction, if:

(1) The carrier is shown to have an involvement in interstate
commerce and,

(2) It can be established that the driver or driver's helper could
have, in the regular course of his/her employment, been reasonably
expected to make one of the carrier's interstate runs or, in the
case of a loader or mechanic, could have been reasonably expected
to perform as such in the carrier's interstate activity.

Satisfactory evidence of the above could take the form of statements from
the carrier's employees, or documentation such as employment agreements.
Where such evidence is developed with regard to an employee, DOT will assert
jurisdiction over that employee for a 4-month period beginning with the date
they could have been called upon to, or actually did, engage in the
carrier's interstate activity. Thus, such employees would be exempt under
Sec 13(b)(1) for the same 4-month period, notwithstanding references to the
contrary contained in IB 782.2.